**SO ORDERED.**

**SIGNED this 12 day of December, 2012.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **DAVID ANTHONY BAKER** | **12-01090-8-SWH** |
| **DEBTOR** | |

**ORDER REGARDING OBJECTION TO CLAIM AND CONFIRMATION OF PLAN**

The matters before the court are the debtor's objection to the claim filed by Theresa Baker ("Ms. Baker") and Ms. Baker's objection to confirmation of the debtor's plan. A hearing took place in Raleigh, North Carolina, on August 22, 2012. On September 20, 2012, the parties jointly requested that the court defer ruling on the matters while settlement negotiations continued. On October 17, 2012, the court was informed that the parties failed to reach a settlement, thus necessitating this ruling.

### BACKGROUND

The debtor and Ms. Baker were married on February 25, 1979, and they separated on or about January 11, 2010. Sometime afterwards, Ms. Baker filed for a divorce decree in the Superior Court of Chatham County, Georgia. On or about October 1, 2010, the superior court judge entered

a Final Judgment and Divorce Decree (the "Divorce Decree") granting the parties a divorce. In the Divorce Decree, the judge made numerous findings, some of which are summarized as follows:

- Two children were born to the debtor and Ms. Baker, both of whom were adults at the time of the divorce proceeding. However, one of the children was suffering from significant mental health impairments and was living with Ms. Baker at the time of the divorce proceeding.

- Ms. Baker is employed with the Effingham County School system earning $4,035.67 per month.

- The debtor was earning approximately $9,710.00 per month at the time of the divorce proceeding.

- The debtor has in the past been the "primary bread-winner in the family" while Ms. Baker "taught school and has been responsible for child care and housekeeping."

- Ms. Baker currently resides in the marital home, which has a fair market value of $352,000.00.

- The debtor and Ms. Baker owe a first mortgage of $107,000.00 and a second mortgage of $100,000.00 on the marital home.

- The debtor and Ms. Baker own a home in South Carolina with an indebtedness totaling $130,000.00 and a fair market value of $25,000.00.

- Ms. Baker currently possesses the parties' 2008 Lexus. The debtor possesses a 2001 Lexus. There is also an outstanding loan for their son's Ford Taurus.

- The debtor and Ms. Baker hold a time share in Maine, for which the debtor is currently paying.

- The debtor and Ms. Baker are both obligated to repay their son's student loans totaling $27,484.00.

- A SunTrust credit card is held by both the debtor and Ms. Baker totaling $13,600.00.

– Ms. Baker has $28,086.00 in retirement earnings.

In the Divorce Decree, the judge also found that the debtor had incurred at least some of the aforementioned financial burdens because of marital misconduct, and that he was capable of paying alimony. The judge found that Ms. Baker was in need of support since her expenses exceeded her income, and as a result, the debtor was ordered to pay Ms. Baker $1,750.00 per month as alimony for support and maintenance, which must be paid until Ms. Baker reaches "age 65, dies or marries, whichever shall first occur."

In the paragraph immediately following the award of alimony in the Divorce Decree, the judge gave Ms. Baker exclusive possession of the parties' marital residence. Ms. Baker is responsible for all expenses incurred in maintaining the residence, including the first mortgage, taxes, insurance and utilities servicing the home. The debtor, however, is responsible for 70% of the balance of the second mortgage, which is evidently a home equity line of credit ("HELOC"). The debtor was also prohibited from incurring any more debt on the HELOC.

In the following paragraphs, the judge awarded Ms. Baker the time share in Maine, the 2008 Lexus, the 2005 Ford Taurus, the funds from the bank accounts in her name, the funds from her retirement accounts, 30% of the funds in the debtor's retirement accounts, as well as a Rolex watch and other marital furnishings. The debtor was awarded exclusive possession of, and title to, the property in South Carolina (the debtor was also responsible for all expenses in maintaining this lot, including the mortgage), the 2001 Lexus, the funds from the bank accounts in his name, the remaining 70% of his retirement accounts, as well as some other miscellaneous household items. The debtor was then required to maintain a life insurance policy on his life in a minimum amount of $200,000.00 of which Ms. Baker would be the beneficiary and owner.

Finally, in the last paragraph of the order, the judge divided up responsibility for the joint and individual debts that were unrelated to the mortgages. Each party would remain responsible for their individual debts. For the joint debt on their son's education loan, the debtor was obligated to pay $38,478.30 and Ms. Baker was obligated to pay $16,490.70. The debtor was obligated to pay the full balance of the parties' joint debts on their credit card accounts.

On or around December 1, 2010, the superior court judge awarded Ms. Baker attorney's fees in the amount of $12,635.70 that were incurred because of the litigation related to the divorce proceeding. In awarding these fees, the judge cited O.C.G.A. § 19-6-2(a)(1), which provides:

> The grant of attorney's fees as part of the expenses of litigation . . . whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case . . . shall be . . . [w]ithin the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party.

Relying on the fact that Ms. Baker made $4,035.67 per month and the debtor made approximately $9,710.00 per month, the judge awarded the fees to Ms. Sutton. The debtor was ordered to pay these fees within six months of the date of the order awarding such fees.

On February 11, 2012, the debtor filed for relief under Chapter 13 of the United States Bankruptcy Code, and on February 12, 2012, the debtor filed his Chapter 13 plan. The plan provides that the debtor will pay a total of $52,500 to the trustee in the amount of $875 per month for sixty months. Within this amount, the plan provides for the repayment of $1,750 to Ms. Baker as a domestic support obligation. Under the plan, however, the debtor will surrender his interest in the marital residence and will not make any ongoing payments, or cure the delinquency, on the HELOC. The general unsecured creditors will not receive anything under the plan.

On April 20, 2012, the Chapter 13 trustee filed a motion to confirm the plan. On May 15, 2012, Ms. Baker filed an objection to the motion, asserting (1) that she is entitled to a domestic support obligation in an amount greater than the $1,750 that is provided for in the plan, (2) that the debtor is not contributing all of his disposable monthly income to the plan, and (3) that the plan is not proposed in good faith. Shortly thereafter, Ms. Baker filed a proof of claim in the amount of $86,440.45 and stated that the full amount was entitled to first priority status under 11 U.S.C. § 507(a)(1)(A) as a domestic support obligation. Ms. Baker's claim consists of (1) an arrearage claim in the amount of $1,750 for the alimony awarded in the Divorce Decree (the "Arrearage Claim"), (2) $70,804.75 based on the debtor's obligation to pay 70% of the HELOC, and (3) $13,885.70 in attorney's fees awarded to Ms. Baker by the state court judge.

On July 7, 2012, the debtor filed his objection to Ms. Baker's claim, asserting that the claim was not a domestic support obligation and that the entire amount should be treated as a general unsecured claim.[1] At the hearing on August 22, 2012, however, the debtor conceded that the Arrearage Claim was in fact a domestic support obligation. The debtor maintained his argument, however, that the obligation to pay the HELOC was a property settlement and not a support obligation, and that a portion of the attorney's fees should not be considered a support obligation because not all of the fees were related to support payments.

Ms. Baker continued to insist that the entire amount of her claim is a domestic support obligation entitled to first priority status. However, in the event that this court determines otherwise, Ms. Baker, relying on prior bankruptcy cases in this district, argues that the plan was not filed in

---

[1] Although the debtor asserted in his objection that Ms. Baker's entire claim should be treated as a general unsecured claim, Schedule E of the debtor's petition as well as his plan provide that the Arrearage Claim is in fact a domestic support obligation.

5

good faith because she is only receiving $1,750 out of her $86,440.45 claim, even though her entire claim would be nondischargeable in a Chapter 7. See, e.g., In re Sewell, 2008 Bankr. LEXIS 4025, at *3 (Bankr. E.D.N.C. Jan. 3, 2008) (finding that a Chapter 13 plan was not filed in good faith because it provided no repayment of an ex-spouse's claim when the entire claim would have been nondischargeable under a Chapter 7 bankruptcy).  Accordingly, the court must determine whether the obligations for the HELOC and attorney's fees are domestic support obligations.  If the court determines that either or both claims are not a domestic support obligation, but rather a general unsecured claim, the court must then decide whether the debtor's plan is filed in good faith when it only provides Ms. Baker with $1,750 of her total claim.

## DISCUSSION

Section 101(14A) of the United States Bankruptcy Code defines a "domestic support obligation" as a debt that is:

> (A) owed to or recoverable by —
>     (i) a spouse, [or] former spouse . . .
> (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of —
>     (i) a separation agreement, divorce decree, or property settlement agreement    . . . and
> (D) not assigned to a nongovernmental entity . . . .

Whether Ms. Baker's claim is a domestic support obligation turns on whether the claim is in the "nature of alimony, maintenance or support." See In re Sewell, 2008 Bankr. LEXIS 4025, at *3 (Bankr. E.D.N.C. Jan. 3, 2008) ("The issue usually comes down to . . . whether the claim is one for alimony, maintenance or support or is one arising from a property settlement. . . ."). The

6

burden of showing that a claim is in the nature of support is on the claimant. Tilley v. Jessee, 789 F.2d 1074, 1077 (4th Cir. 1986). If the claim arose from an agreement between the parties, courts must determine whether the parties intended for the obligation to be in the nature of support at the time the parties executed the agreement. See Tilley, 789 F.2d at 1078; In re Melichar, 661 F.2d 300, 303 (4th Cir. 1981); In re Alston, 2008 Bankr. LEXIS 2660, at *5 (Bankr. E.D.N.C. August 22, 2008); Sewell, 2008 Bankr. LEXIS 4025, at *3-4. If the claim arose from a court order, the issue is whether the court issuing the order intended for the obligation to be in the nature of support. See In re Bowen, 2010 Bankr. LEXIS 1520, at *14 (Bankr. E.D.N.C. May 10, 2010) (considering the findings made by the state court judge to determine whether that judge intended for the obligation arising from the court order to be in the nature of support); In re Bennett, 2009 Bankr. LEXIS 4398, at *4-7 (Bankr. E.D.N.C. February 9, 2009) (determining whether the state court intended for a debt to be in the nature of support when the debt arose from a court order).

To determine the parties' intention, or the court's intention in cases where the claim arose from a court order, the bankruptcy court should consider the terms of the agreement or court order, but "labels given to the obligations are not controlling." Alston, 2008 Bankr. LEXIS 2660, at *5; see also Tilley, 789 F.2d at 1077-78; Sewell, 2008 Bankr. LEXIS 4025, at *4. Other relevant factors to look at include:

> the nature of the obligation, whether there are dependent children, the relative earning power of the spouses and an indication that the obligation was an attempt to balance it, the adequacy of the dependent spouse's support without the assumption of the obligation, dependent spouse's receipt of inadequate assets in settlement, status of the obligation upon death or remarriage, timing of payments (lump sum or periodic), the payee (direct vs. indirect), waivers of maintenance, whether the obligation is modifiable, location of the paragraph containing the obligation within the agreement (whether

7

>           or not it is located within the property distribution section), and the
>           tax treatment of the obligation.

Alston, 2008 Bankr. LEXIS 2660, at *4-5; Sewell, 2008 Bankr. LEXIS 4025, at *4; Zeitchik v. Zeitchik (In re Zeitchik), 369 B.R. 900, 904 (Bankr. E.D.N.C. 2007); Sawtelle v. Keech (In re Keech), Adv. Pro. No. L-03-00109-8-AP, slip op. at 6-7 (Bankr. E.D.N.C. January 7, 2004).

The HELOC encumbers the marital residence in which Ms. Baker is, and was at the time of the divorce proceeding, residing. The debtor and Ms. Baker have a son who, although an adult, has significant mental health impairments. Their son is also currently residing in the marital residence with Ms. Baker and was doing so at the time of the divorce proceeding. Accordingly, the obligation to pay 70% of the HELOC is, in essence, one that provides Ms. Baker and her son with what many courts have deemed to be a necessity of life, i.e. the obligation assists in the provision of shelter for Ms. Baker and her son. See, e.g., In re Gianakas, 917 F.2d 759, 764 (3rd. Cir. 1990) (stating that "provision for the family home is, together with food and transportation, one of the traditional components of support and maintenance"); In re King, 461 B.R. 789, 794 (Bankr. D. Alaska 2010) (stating that the "the mortgage payment provision constituted maintenance and support for the wife and children of the debtor," because "[s]helter is a necessity of life"). Many courts have concluded that an obligation to make mortgage payments is in the nature of support by relying primarily, if not exclusively, on the notion that the payments are assisting with the provision of shelter, or as some courts have said, a necessity of life.[2] Therefore, the nature of this obligation–one that helps

---

[2] In re Gianakas, 917 F.2d 759, 764 (3rd. Cir. 1990); Tatge v. Tatge (In re Tatge), 212 B.R. 604, 608 (8th Cir. BAP 1997); In re King, 461 B.R. 789, 794 (Bankr. D. Alaska 2010); In re Bristow, 2005 Bankr. LEXIS 1117, at *17 (Bankr. M.D.N.C. April 22, 2005); In re Trump, 309 B.R. 585, 594 (Bankr. D. Kan. 2004); In re Batzek, 314 B.R. 464 (Bankr. M.D. Fla. 2004); Leslie v. Leslie (In re Leslie), 181 B.R. 317, 320 (Bankr. N.D. Ohio 1995).

Ms. Baker and her son remain in their home–strongly weighs in favor of concluding that it is in the nature of support.

As previously mentioned, the debtor and Ms. Baker have a son who currently, and at the time of the divorce proceeding, suffers from mental health impairments. At the hearing on August 22, 2012, Ms. Baker testified that prior to the divorce their son was diagnosed with bipolar disorder. He underwent intensive therapy for the disorder, and his psychiatrist informed Ms. Baker that it was in the son's best interest to remain at home with a parent instead of living independently. Thus, although their son was an adult at the time of the divorce proceeding, it is evident that he was still highly dependent on his parents.

There was also a large disparity between the debtor's and Ms. Baker's income at the time of the divorce proceeding, with the debtor making approximately $9,700 monthly and Ms. Baker making approximately $4,030. In reference to their relative earning power, the state court judge specifically described the debtor as the "primary bread-winner in the family," and Ms. Baker as the spouse that "taught school and has been responsible for child care and housekeeping." This characterization of each party's respective role within the family suggests that the state court judge was attempting to balance the unequal incomes and relative earning power between the debtor and Ms. Baker with the Divorce Decree.

The amount of support Ms. Baker would receive under the Divorce Decree if the debtor was not required to assume 70% of the HELOC obligation would seem inadequate given her own expenses and obligations. Without the debtor's assistance on the HELOC, Ms. Baker would be forced to repay the entire balance on that obligation in addition to the expenses she is already responsible for, such as the first mortgage on the marital residence, the indebtedness on the Maine

9

time share, the indebtedness on her automobiles, 30% of the amount owed for her son's educational loans, and all other living expenses. Although Ms. Baker received certain assets pursuant to the Divorce Decree, the only amount of actual support awarded to her was $1,750 per month in alimony. This amount, even when considered with her annual salary, seems insufficient to cover all of her current expenses plus the full amount of the HELOC obligation.

Ms. Baker provided an itemized account of her monthly income and expenses to support this inadequacy.[3] The itemization is based on the fact that Ms. Baker is currently having to pay all interest accruing on the HELOC due to the debtor's current failure to contribute his share of the obligation as required by the Divorce Decree.[4] It shows that Ms. Baker's average monthly income, which includes her salary and the alimony, is insufficient to pay all of her expenses plus the full amount of interest that accrues each month on the HELOC. These figures do not even take into consideration the $70,000 in principal that Ms. Baker would ultimately be responsible for if the Divorce Decree did not require the debtor to pay 70% of the HELOC obligation.

---

[3] Ms. Baker provided sample Schedules I and J to illustrate her current monthly income and expenses. Based on these documents, her net monthly take home pay is $4,671.23 and her average monthly expenses are $4,957.44, demonstrating that her expenses exceed her income by $286.21 per month.

[4] As stated previously, the Divorce Decree requires the debtor to pay 70% of the HELOC obligation. The full amount of this obligation is approximately $100,000 plus $225 per month in interest. The debtor, therefore, is responsible for approximately $70,000.00 in principal plus $157.50 per month in interest. It is evident, however, that currently the only amount being paid down on the HELOC is the $225 in interest accruing each month. Ms. Baker's itemization only includes the amount of interest she is currently having to pay each month, i.e. $225.00, which includes the amount that the debtor should be paying each month to cover his share of the interest, i.e. $157.50. It does not include the $70,000 in principal that Ms. Baker would eventually have to pay if the debtor was no longer responsible for 70% of the HELOC obligation.

The remaining factors, inability to modify, installment versus lump sum, direct versus indirect payment, [5] position in the decree,[6] and tax treatment,[7] are not strongly persuasive in either parties' favor. After analyzing the determinative criteria, there are certainly more factors suggesting that the HELOC was intended to be for support than there are that suggest otherwise. More importantly, however, is that the most indicative factors–the nature of the obligation, a dependent child, disparity in earning power, and the inadequacy of other support–all support a conclusion that the HELOC is in the nature of support.

The court must now consider whether the attorney's fees awarded to Ms. Baker are in the nature of support. Many courts have concluded that the award of attorney's fees in a proceeding related to a divorce decree or separation agreement is in the nature of maintenance or support. In re Silansky, 897 F.2d 743, 744 (4th Cir. 1990); In re Joseph, 16 F.3d 86, 88 (5th Cir. 1994); In re Spong, 661 F.2d 6, 8 (2d. Cir. 1981); In re Genovese, 1996 U.S. App. LEXIS 24046, at *5 (4th Cir. September 12, 1996) (unpublished table decision); In re Forkish, 2010 Bankr. LEXIS 361, at *7-8

---

[5] The debtor testified that at some point in time he had been making payments to the bank, but it is unclear whether this was before or after the Divorce Decree was entered. The debtor admitted during his testimony that he did make at least one payment directly to Ms. Baker, and it is apparent that this was in response to the Divorce Decree.

[6] The paragraphs are not labeled, although it is interesting to note that the HELOC debt was divided in the paragraph immediately following the award of alimony, whereas most other debt is dealt with in an entirely separate paragraph towards the end of the Divorce Decree.

[7] The evidence is unclear regarding the tax treatment for this obligation, both as to the debtor and Ms. Baker. The debtor testified that he was deducting the HELOC payments sometime in 2010, but the deduction was based on mortgage interest payments. The debtor has made relatively few payments towards the HELOC obligation after the Divorce Decree, and it is unclear how those payments have been treated for tax purposes. When asked during cross-examination, Ms. Baker testified that she was unsure how these payments were being treated for tax purposes.

(Bankr. E.D.N.C. February 2, 2010); In re Pennington, 2011 Bankr. LEXIS 4977, at *5-6 (Bankr. W.D.N.C. Dec. 14, 2011).[8]

Out of these decisions, some courts have stated that the fees were in the nature of support because they were related to a proceeding in which a support order or agreement was being enforced. See, e.g., Forkish, 2010 Bankr. LEXIS 361, at *7. Other courts, as well as some circuit courts, have stated that the fees were in the nature of support because the state court judge actually intended for the fees themselves to be support, not because the fees merely related to the enforcement of a support order or agreement. See Joseph, 16 F.2d at 88; Pennington, 2011 Bankr. LEXIS 4977, at *5; In re Andrews, 434 B.R. 541, 549 (Bankr. W.D. Ark. 2010). For example, in Joseph, the Fifth Circuit affirmed the bankruptcy court's decision that the "attorney's fee judgment formed part of an overall economic arrangement" to provide the ex-spouse with needed support. 16 F.3d. at 87. The court held that the fees were in the nature of support because "the award itself reflects a balancing of the parties' financial needs," not because the fees "tangentially relate[] to an award of support and maintenance." 16 F.3d at 88; see also Foiles, 1995 U.S. App. LEXIS 20753, at *6 (4th Cir. August 7, 1995) (unpublished table decision) (adopting reasoning in Joseph); Bristow, 2005 Bankr. LEXIS 1117, at *20 (finding that attorney's fees are in the nature of support when the judgment "reflects the state court's intent to balance the financial needs of the parties").

---

[8]A majority of these cases were decided pre-BAPCPA and before the definition of a domestic support obligation was added to the Code. However, these cases did consider and decide whether attorney's fees were in the "nature of support" for purposes of dischargeability under § 523(a)(5), and their analysis is applicable to the issue of whether attorney's fees fall under the definition of a domestic support obligation. See In re Andrews, 434 B.R. 541, 545-46 (Bankr. W.D. Ark. 2010); In re Poole, 383 B.R. 308, 313 (Bankr. D.S.C. 2007).

The state court judge awarded the fees to Ms. Baker only after considering the financial circumstances of both parties. Specifically, the judge stated that Ms. Baker made $4,035.67 per month and the debtor made approximately $9,710.00 per month. He then awarded $12,635.70 of attorney's fees to Ms. Baker. In making this award, the judge rejected the debtor's argument that the fees should not be awarded to Ms. Baker because, as the debtor contended, she had already been "awarded the majority of property as well as alimony . . . whereas he was awarded the majority of debt." Further, the judge cited O.C.G.A. § 19-6-2(a)(1) in awarding the fees, which requires the judge to consider the financial circumstances of both parties before making an award. It is thus apparent that the fee award was based on an attempt by the judge to balance the financial needs of the parties, which has previously been accepted by other courts as a reason for finding that attorney's fees are in the nature of support. See, e.g., Joseph, 16 F.3d at 88; Bristow, 2005 Bankr. LEXIS 1117, at *20. Accordingly, the entire amount of the fee award is a domestic support obligation, even if a portion of the fees may have been unrelated to support payments.

In sum, the court concludes that the full amount of the HELOC obligation and the attorney's fees are in the nature of support and are thus a domestic support obligation. The obligation to pay the attorney's fees arose from the state court order entered on December 1, 2010. Therefore, this obligation had matured by the petition date and is thus an allowed claim pursuant to 11 U.S.C. § 502(b)(5). See 11 U.S.C. § 502(b)(5) (providing that a domestic support obligation is an allowed claim unless the obligation has yet to mature by the date that the petition is filed). As an allowed domestic support obligation, it is entitled to first priority status and must be provided for in full through the plan before the plan can be confirmed, unless Ms. Baker agrees otherwise. See 11 U.S.C. § 507(a)(1)(A) (providing that a domestic support obligation that is an allowed claim is

entitled to first priority status); see also 11 U.S.C. § 1322(a)(2) ("The plan shall . . . provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim").

It is apparent, however, from the HELOC loan documents and the evidence presented by Ms. Baker that not all of the HELOC obligation had become due by the petition date. The amount of the HELOC obligation, including interest, that had yet to become due by the petition date is not an allowable claim pursuant to 11 U.S.C. § 502(b)(5). See White v. Bell (In re White), 212 B.R. 979, 984 (1997) (disallowing a domestic support obligation to the extent that some of the obligation's payments had yet to accrue, and thus had not become due, by the petition date); Stair v. Shumate (In re Shumate), 42 B.R. 462, 464 (1984) (stating that alimony payments coming due after the debtor's petition in bankruptcy do not constitute an allowed claim).[9] The amount that had become due by the petition date is an allowed domestic support obligation claim and must be provided for accordingly in the plan.

---

[9]Although the amount that had yet to become due by the petition date is not an allowed claim, they constitute nondischargeable debt that may be enforced in state court. See 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 502.03[6][a] (16th ed. rev. 2012) ("Section 523(a)(5) excepts from discharge debts of an individual debtor to a spouse, a former spouse or a child of the debtor for alimony, maintenance or support. . . . The essence of a nondischargeable debt is that the creditor holding such debt may proceed against the debtor following the filing of the petition and may pursue after-acquired assets to vindicate the claim.").

In light of the court's conclusion that the HELOC obligation and the attorney's fees are domestic support obligations, the court need not address Ms. Baker's alternative argument that the debtor's plan was not proposed in good faith. Based on the foregoing reasons, the debtor's objection to Ms. Baker's claim is **ALLOWED** in part and **DENIED** in part, and Ms. Baker's objection to plan confirmation is **ALLOWED**.

**SO ORDERED**.

**END OF DOCUMENT**